OPINION OF THE COURT
Edward Greenfield, J.
In this pre-equitable distribution marital dispute, both the husband and the wife claim the right to purchase the co-operative apartment at 500 East 83rd Street which had previously been the marital domicile. The parties, who were married in 1963, moved into the premises at 500 East 83rd Street in 1972 and successive leases were signed for that apartment by the husband, Steven Burns, who was named as the tenant in each and every instrument of lease. One lease ran from 1972 to 1974, the next to 1975 and then to 1978 and then to 1980.
In March of 1978 the husband left the marital abode. Whether he was requested to leave or did so of his own volition, this court does not decide. The wife continued to reside in the apartment with the three children, while the *230 husband moved elsewhere to furnished rooms or apartments, first within the City of New York and thereafter in California.
Despite the fact that the husband had left the apartment in March of 1978, the lease was renewed on July 31, 1978, again in the name of husband and again with the husband undertaking to and in fact actually paying the rent for that apartment for each and every month.
On December 1,1978 the owners offered to the tenants a plan of conversion to co-operative ownership, and apartment 21M, which was the apartment in which the Burns had resided, was offered at $79,910. The plan to co-op the building was declared effective March 14, 1979. Both husband and wife attempted to subscribe to the right to purchase the shares for the apartment, each proffering the required deposit.
The landlord rejected the subscription offer of the husband and initially accepted that of the wife as the one having the right to purchase. It appears, however, that thereafter the landlord, on not receiving the required amounts, attempted to resell the right to the apartment to a third party. That third party and the landlord are not presently making claim to the rights to that apartment. So the issue is solely as between husband and wife.
The wife and children have continued to reside in the apartment to the present date and the husband has continued to pay the rent and all utility charges, gas, electricity and telephone in connection with the occupancy of that apartment. The husband now seeks a declaratory judgment that he is the party entitled to the purchase of the shares of the co-operative.
Both parties claim to be ready, willing and able to pay the entire purchase price and acquire the apartment. The wife, who has an independent income of not more than $7,500 a year, contends that she will be able to make arrangements for the purchase. Undoubtedly such arrangements can be made, since the offering price of the apartment to an insider-occupant is considerably less than the going market price in New York City. In this case the insider price is $79,910. We are informed that the current *231 market rate for such an apartment is in the area of $300,000. It would therefore appear that this co-operative apartment is the principal asset of the marriage and of whichever marital partner accedes to the rights.
While the wife professes a desire to purchase the apartment in order to be able to continue to live there with her children, the court is not persuaded that she has the capacity to do so, since the maintenance, carrying charges and financial expenses will be in excess of $24,000 a year. Since her other requirements, she claims, are somewhere in the neighborhood of $30,000 a year (at least that is what she would like to have), and since she will be required to pay income taxes on her earnings and that portion of any court award which is given to her as alimony, it is apparent that without some outside source of income there is no way which she can continue to occupy the apartment.
The husband has filed income taxes indicating a variable income and he does not appear to have any current assets rendering him capable of purchasing the apartment without help from some outside source. He has produced his personal attorney who has indicated that he would be willing to finance it. Whether it be he or somebody else again, it is apparent that persons would be available to make the funds for the purchase of the apartment accessible, but only if the apartment were “flipped”, that is, resold to a third person at a profit, presumably after the period required for retention in order to qualify as a capital gain.
Under those circumstances, it would appear that neither side seeks to acquire the apartment for residential purposes, and that both seek to realize such profit as can be made on the resale of the apartment. The question, then, is, under the law, whether the husband, who is the party named as tenant on the lease, and who paid the rent, or whether the wife, who is physically in possession of the premises, can qualify as a prospective purchaser, as “tenant in occupancy”.
The rights of the parties in this case are governed by subdivision 5 of section 61 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. Section 61 defines the persons who have the right to *232 purchase co-operative shares pursuant to a conversion offering plan, and that section restricts that right to tenants and lessees. Subdivision 5 provides: “This Section 61 shall only apply to tenants in occupancy and lessees of record of vacant or subleased apartments' at the time of the offering; it shall not be applicable or available to subtenants, or tenants leasing an apartment that was vacant at the time of the presentation of the Plan.”
It thus appears that there are two classes of persons entitled to subscribe to co-operative shares. First is a tenant in occupancy and the second is a lessee of record of vacant or subleased apartments. Neither of the parties here is a lessee of a vacant or subleased apartment, so that portion of the code does not deal with them at all. It is significant, however, that the code recognizes the right of a lessee of record, i.e., the person whose name appears on the lease, to make claim to the right to purchase co-operative shares even though he or she is not in occupancy and the apartment is vacant or actually in the possession of a subtenant. The question presented here (and there appear to be no reported cases dealing with the subject) is whether the husband or the wife is deemed to be the “tenant in occupancy” under this provision of the code.
Under the standard form apartment lease for these premises, agreement was made between Kal Associates, “party of the first part hereinafter referred to as Landlord, and Steven Burns, party of the second part, hereinafter referred to as Tenant.”
Under the lease, therefore, it clearly appears that Steven Burns alone is the designated tenant under the lease.
Paragraph 1 of the lease requires the tenant to pay the rent. Paragraph 2 of the lease provides that the demised premises are to be occupied “only by Tenant and the members of the immediate family of Tenant.”
Thus, it is clear that the lease recognizes two classes of persons who may be entitled to occupancy, i.e., the tenant and additionally, members of the immediate family of the tenant.
Under these circumstances, the wife, not being named as a tenant in the lease, having a right to reside in the *233 premises as a member of the immediate .family of designated tenant, and never having paid any of the rent for the premises, and indeed not being legally obligated to do so under the lease, is not the tenant, although she may be in occupancy. Her position is not essentially different from the children, who are also “members of the immediate family” who may reside in the apartment with no legal obligation to pay rent.
We then have to inquire as to whether Steven Burns, who is the designated tenant, qualifies to purchase the shares of the apartment as the “tenant in occupancy”. Tenant he clearly is. Whether he is in occupancy is another matter.
The testimony indicates that since he left the apartment in March of 1978, he has resided at various temporary abodes in the City of New York, he has resided at various addresses in California but throughout that period not only did he continue to pay the rent on this apartment, but he continued to pay New York income taxes, although his income and his business activities were then centered in California.
He did surrender his New York driver’s license, but he did not change his voting since he apparently has not voted for some time. He carried his New York address on some things, his California address on others. None of that, in the court’s opinion, is conclusive as to whether or not he qualifies as an occupant of the apartment.
It is significant that both the code and decisions recognize the right of a designated tenant or lessee of record to purchase co-operative shares even though the tenant or lessee is not physically in possession of the premises. The code itself provides expressly (§ 61, subd 5) that even if the apartment is vacant, the person who is designated as the lessee of record has the right to purchase.
It further provides that even if the apartment is occupied by someone else, i.e., a subtenant, the lessee of record is still the person qualified to purchase the shares.
In this case, the apartment is neither vacant nor occupied by a subtenant. Indeed, Mr. Burns’ immediate family resides there with his permission and sufferance. They *234 may be considered either as his licensees or as the members of his family who are permitted to reside there by the lease. He may be deemed “in occupancy” through them.
Only two cases were called to the attention of the court dealing with the rights of a named tenant who is not in actual physical possession of the premises to make claim.
One such case is Thuna v Di Sanza (102 Misc 2d 342), decided by Mr. Justice Ascione of this court, and unanimously affirmed without opinion at 78 AD2d 517. In that case Mr. Justice Ascione held that the lessee of the apartment who had signed the lease and who had been living in California while his sister’s daughter occupied the apartment was nevertheless deemed to be the person who was entitled to purchase the shares for the apartment.
In other words, actual physical presence in the apartment was not required of the person who had signed the lease, even though the apartment was not vacant, nor had it in fact been sublet. A member of the tenant’s family was residing in the apartment at the sufferance of the tenant and with her permission. But unlike this case, the rent was paid directly by the tenant’s sister.
In Ian v Wassberg (79 AD2d 919), the Appellate Division of this department modified a judgment of this court to declare that the plaintiff was the tenant in occupancy exclusively entitled to purchase the shares of a co-operative apartment, even though plaintiff, who was the lessee of the apartment, was not in actual physical possession and the landlord had permitted another party actually to occupy the apartment. There, even though the plaintiff as named lessee was not physically present in the apartment and it was not occupied by a member of his family, the court declared (p 920) that “plaintiff was, within the meaning of the Rent Stabilization Law (Code of the Real Estate Industry Stabilization Association of New York City, Inc., § 61, subd 4, par [b]) the tenant in possession * * * on * * * the effective date of the conversion to co-operative ownership and was exclusively entitled to purchase the shares of stock allocated to that apartment.”
Since it appears that a tenant may be “in occupancy” even though his actual physical" presence in the apartment is not required, this court finds that the husband, Steven *235 Burns, qualifies as the tenant in occupancy. Indeed, it may be said that he is in fact in occupancy through the members of his immediate family, whom he permits to reside in the apartment for which he pays rent.
Under the circumstances, since he is the person who pays the rent, since he is the sole person who has legal obligations to continue to pay the rent until the termination of the lease, and since the wife has no obligations of any sort in that regard and has neither paid the rent, contributed toward paying the rent, nor is obligated to pay the rent, it appears that under the provisions of section 61 Steven Burns qualifies as the tenant in ocupancy and is the sole party entitled to subscribe to and to purchase the shares allocated to apartment 21M at 500 East 83rd Street.
Defendants Kal Associates and Douglas Elliman-Gibbons and Ives, Incorporated, have applied for the recovery of interest on the $79,910 purchase price of the apartment, together with their attorney’s fees. Pursuant to a stay issued by this court on April 5, 1979, Kal has held the shares for apartment 21M when all other shares were transferred on May 3, 1979. It contends that it was in the position of a mere stakeholder, and is entitled to the relief sought under CPLR 1006 (subd [f]).
CPLR 1006 (subd [f]) authorizes a court to “impose such terms relating to payment of expenses, costs and disbursements as may be just”, as well as interest at the Federal Reserve discount rate. However, Kal and Elliman were not stakeholders holding shares for which adverse parties were contesting. First Kal sought to make the shares available to the wife, then Kal contended that both parties had lost their rights to the shares by failure to consummate the transaction, and attempted to make an abortive sale to a third party. Although it later abandoned this position, it was a contesting party, and not a stakeholder, during most of the life of this litigation. Where it “does not stand indifferent to the claim”, it is not a mere stakeholder. (Nelson v Cross & Brown Co., 9 AD2d 140, 143.) The application for interest and counsel fees is accordingly denied.