OPINION OF THE COURT
Edward J. Greenfield, J.
In cooperative conversion plans, tenants and their spouses who do not buy their apartments are accorded a statutory exemption from eviction if they are disabled or senior citizens. The determination as to who qualifies is left to the Attorney-General’s office. The question here presented is whether that office, in passing on those qualified for such exemption, can extend the exemption if the disabled or elderly person is not the tenant or spouse, but some other member of the family living in the apartment with the named tenant. This court holds that it may not.
In this CPLR article 78 proceeding to vacate and reverse the decision of the New York State Department of Law, respondents have cross-moved to dismiss the petition.
Petitioner is the owner of an apartment house at 230 East 79th Street in the Borough of Manhattan, which is in the process of being converted to cooperative ownership under an eviction plan. Prospectuses containing the offering plan were sent to all the building’s tenants, including *405 Dr. A. Robert Neurath, the tenant of record in apartment 5-F since August of 1972. The offering plan notified tenants that if eligible, they could elect to become “non-purchasing disabled persons” exempt from eviction.
An application to be considered as an eligible nonpurchasing tenant was thereupon filed with the Real Estate Financing Bureau of the Attorney-General’s office by Dr. Neurath’s mother, Lenka Neurath, who lived with him, on the grounds that she was 76 years of age, and legally blind. Over the objections of the building owner that she was not the tenant of the apartment, respondent ruled that the mother was an eligible senior citizen and an eligible disabled person under subdivision 1 of section 352-eeee of the General Business Law and qualified as a nonpurchasing tenant. This article 78 proceeding followed.
Both sides agree that there are essentially no undisputed facts, and that this court is presented with a matter of law — who is eligible as a nonpurchasing tenant under subdivision 1 of section 352-eeee of the General Business Law. Respondent insists that the interpretation it has given to the statute is entitled to the greatest weight.
The Court of Appeals has declared: “Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. (Matter of Howard v Wyman, 28 NY2d 434; cf. Ostrer v Schenck, 41 NY2d 782, 786.) Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight. (See Matter of Adams [Government Employees Ins. Co.], 52 AD2d 118, 121.)” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459.)
*406 As Mr. Justice Ascione of this court had occasion to say recently, “the court should not blindly follow the rulings of executive or administrative orders since it is the court which is the final arbiter of the proper construction of a statute (McKinney’s Statutes, sec. 129 [b]). Moreover * * * the effect of a particular statute may not be enlarged beyond the generally accepted meaning of the terms thereof by the opinion or action of executive or administrative officers (Id; Evans v. Newman, 100 Misc. 2d 207, affd 71 AD2d 240, affd 49 NY 2d 904).” (Gotbaum v Lewis, NYLJ, Jan. 17, 1984, p 12, col 2.)
Section 352-eeee of the General Business Law, which deals with conversions of buildings in New York City to cooperative or condominium ownership, provides that under an eviction plan approved by at least 51% of the tenants in occupancy, a nonpurchasing tenant may be evicted (subd 1, par [c]), unless such nonpurchasing tenant is either an “eligible senior citizen” or an “eligible disabled person” (subd 2, par [d], cl [iii]).
“Eligible senior citizens” are defined in section 352-eeee (subd 1, par [f]) of the General Business Law as: “Non-purchasing tenants who are sixty-two years of age or older on the date the attorney general has accepted the plan for filing, and the spouses of any such tenants on such date”. (Emphasis supplied.)
“Eligible disabled persons” are defined in paragraph (g) of subdivision 1 as: “Non-purchasing tenants who have an impairment which results from anatomical, physiological or psychological conditions * * * which are expected to be permanent and which prevent the tenant from engaging in any substantial gainful employment * * * and the spouses of any such tenants”. (Emphasis supplied.)
Clearly, Lenka Neurath, Dr. Neurath’s mother, was a senior citizen over the age of 62, and having been declared legally blind, was a disabled person. The question is, did her age and disabilities render the apartment in which she resided with her son immune from eviction proceedings if the conversion plan became operative?
The statute conferring immunity from eviction for non-purchasing elderly or disabled tenants was designed to protect those who because of age or infirmity could not or *407 would not switch from rent paying tenant to co-op owner. Such persons were not to be confronted with the alternative posed to younger and abler tenants to pay a substantial sum to purchase or to relocate to other quarters. That immunity, however, is not conferred by the statute if anyone residing in the apartment is elderly or disabled. By the plain words of the statute, the immunity is granted to the nonpurchasing tenant, and his or her spouse.
There can be no question that Dr. Neurath is a tenant. He is the person who has signed the lease, he is the one who has paid the rent, and he has himself been continually residing in the apartment. He himself is not a senior citizen, nor is there any indication he is physically impaired. Is he freed from having to make the choice of “buy or move” because his elderly and infirm mother lives with him?
In enacting the statute, the Legislature made a legislative finding that “it is sound public policy to encourage * * * conversions while, at the same time, protecting tenants in possession who do not desire or who are unable to purchase the units in which they reside * * * that in the city of New York the position of non-purchasing tenants who are sixty-two years of age or older is particularly precarious by reason of the limited financial resources of many such persons and the physical limitations of many such persons” (L 1982, ch 555, § 1).
Dr. Neurath is not in that class of citizens who are protected by the statutory exemption. There is no showing that he is unable to make the purchase or relocate. This court concludes that he cannot hide behind the skirts of his elderly mother, and contend that she, rather than he as the leaseholder, is the tenant.
The term “tenant” is not itself defined in the statute. The Attorney-General, somewhat disingenuously, points to petitioner’s offering plan, and argues that it should be bound by the definition appearing therein: “Who is considered a tenant? A tenant for the purposes of this form is a person who has signed a lease, the husband or wife of a person who has signed a lease, or anyone else legally and permanently living in the apartment.”
*408 These are not the sponsor’s chosen words, however, nor does this definition track the language of the statute. These are the words chosen by the Attorney-General’s office to appear on its “Election Not to Purchase Form.” It has mandated that its form be made part of the offering plan.
There are numerous cases defining who is a “tenant” for the purposes of a cooperative conversion plan, so the term has a well-established meaning. The tenant is the person named in the lease and who pays the rent, even when a spouse or other member of the family is in residence. (Burns v Burns, 113 Misc 2d 229, affd sub nom. Burns v 500 East 83rd St. Corp., 90 AD2d 706, affd 59 NY2d 784; see, also, Ian v Wassberg, 79 AD2d 919.) As between the absent leaseholder of record and a resident member of the family, the person who signed the lease is the person qualified as the tenant who has the right to purchase the co-op apartment. (Thuna v Di Sanza, 102 Misc 2d 342, affd 78 AD2d 517; Miller v Miller, NYLJ, Oct. 20, 1982, p 11, col 4.)
The statute here involved broadens the exemption from purchase to include not only such “tenant”, but also his or her spouse. The language is quite explicit. It does not include other members of the immediate family. “The words mean precisely what they say, and the [agency] may not under the guise of administering the statute ascribe a different or unreasonable meaning to those words.” (Matter of Rosenbluth v Finkelstein, 300 NY 402, 405.) If the Legislature had intended to broaden the senior citizen and disability exemptions beyond the tenant and spouse, to embrace all members of the tenant’s family, it would have been easy enough to say so. It chose not do do so. (Cf. Matter of Harchack v Bronstein, 47 AD2d 726.)
The fact that the lease permits residence by “tenant and the members of the immediate family of tenant” is beside the point. They are set forth as separate entities, and while they are qualified to live there, they are not qualified purchasers. It is equally beside the point that a family member might qualify as a rent-stabilized tenant if the tenant of record vacated the premises.
In short, if a tenant of record or spouse does not qualify for an exemption, he or she cannot claim it because a *409 disabled niece or an elderly mother lives there. Lenka Neurath is not the tenant of the apartment nor the spouse of the tenant. She is an occupant. Dr. A. Robert Neurath is the tenant who may purchase, or not purchase as he chooses.
The determination of the Attorney-General’s office is arbitrary, and contrary to the law. Accordingly, the article 78 petition to vacate the determination is granted, and the cross motion denied.