OPINION OF THE COURT
Leon A. Beerman, J.
Defendant Walter Hohenstein moves for an order vacating and setting aside the plaintiff Selma Hohenstein’s demand for a bill of particulars and for a protective order limiting the deposition by striking from the notice the provisions requiring defendant, Walter Hohenstein, to produce upon deposition such books and papers as are more fully listed in plaintiffs Selma Hohenstein’s and Roslyn Weinstein’s notice. The plaintiffs are grandmother and granddaughter, respectively.
Plaintiffs, Selma Hohenstein and Roslyn Weinstein, cross-move for an order striking out the answer of defendant, Walter Hohenstein, and granting accelerated judgment in favor of plaintiffs for the relief demanded in the complaint.
With respect to the cross motion, plaintiffs’ complaint sets forth five separate causes of action; the first against defendant, Walter Hohenstein, for a declaratory judgment with respect to plaintiff Selma Hohenstein’s right to purchase the shares allocated to apartment 3U in the building located at 84-51 Beverly Road, Kew Gardens, Queens. The four remaining causes of *54 action are against the sponsor of the co-op plan, Beverly House Company, and the apartment corporation whose shares of stock are being offered, Beverly House, Inc., and arise out of plaintiffs’ attempt to purchase the subject shares of stock.
Plaintiffs’ contentions cannot be presented without a short recitation of the facts upon which the actions are predicated.
Plaintiff, Selma Hohenstein, and defendant, Walter Hohenstein, were married in 1939 and sometime in 1954 moved into the subject premises. The premises are rent controlled and at present there is no written lease. In 1979, as a consequence of irreconcilable differences, Selma and Walter entered into a separation agreement. As a result of the agreement, defendant Walter Hohenstein was to move from the subject premises into a separate residence, while Selma remained in the apartment. In accordance with the terms of the agreement, Walter made monthly alimony payments equivalent to the monthly rent.
Sometime in 1983, the owners of the apartment building decided to convert it to a cooperative and so informed the tenants. After the plan was declared effective, Selma and Walter both attempted to subscribe for the shares allotted to the subject premises. However, by letter dated March 6,1984, the sponsors refused both subscriptions citing their reluctance to become involved in the Hohenstein’s matrimonial difficulties. Thereafter, on March 26, 1984, plaintiffs commenced this action for a declaratory judgment and money damages.
It should be noted that the other plaintiff, Roslyn Weinstein, the granddaughter of Selma, contends that she has a right of occupancy as an incident of Selma’s tenancy.
Now, on the instant motion, plaintiff Weinstein, by way of affidavit, advises the court that on May 11,1984, Selma passed away. As yet, no representative has been appointed. Nevertheless, plaintiff Weinstein asserts in her papers that summary judgment is appropriate under the circumstances based upon either of the following two theories:
(1) Plaintiffs were the only “tenants in occupancy” on the date the plan was accepted for filing and, thus, pursuant to General Business Law § 352-eeee (2) (d) (ix), were the only persons entitled to purchase the shares allocated to apartment 3U;
(2) that Selma Hohenstein was the only one who tendered the required deposit of $6,203.70.
Initially, the court notes that the second theory advanced by plaintiff is without merit, in view of the fact that the sponsor’s plan was amended to require a deposit of only $1,000 and *55 plaintiff concedes that defendant Walter Hohenstein did in fact tender $1,000 along with the subscription agreement.
Now with respect to plaintiffs’ first and primary contention, General Business Law § 352-eeee (2) (d) (ix) provides in pertinent part: “The tenants in occupancy on the date the attorney general accepts the plan for filing shall have the exclusive right to purchase their dwelling units or the shares allocated thereto”.
The basis of plaintiffs’ contention rests upon a literal interpretation of General Business Law § 352-eeee (2) (d) (ix), to wit: that only persons physically present in the apartment at the time the offering plan is accepted for filing can qualify as “tenants in occupancy”.
However, this is not the interpretation the courts in our State have given to the statute. In fact, it has been consistently held that physical presence of an individual in the apartment at the time the offering plan becomes effective is not in and of itself determinative of the issue of who is eligible to subscribe to the shares allocated to the subject premises as the “tenant in occupancy”. (Ian v Wassberg, 79 AD2d 919 [1981]; Burns v Burns, 113 Misc 2d 229 [1982], affd sub nom. Burns v 500 E. 83rd St. Corp., 90 AD2d 706 [1982]; Miller v Miller, NYLJ Oct. 20,1982, p 11, col 4.)
At bar, the critical factor in the court’s determination is not the physical presence of any one individual in the apartment, but the separation agreement made by the parties.
The agreement provided, inter alla, for “settlement of all questions relating to their property rights and stabilizing their other rights and obligations growing out of the marriage relationship.” Additionally the parties agreed that from the time of the execution of the agreement they would live separate and apart.
Moreover, the court deems most significant paragraph 8 of the separation agreement which relates specifically to the subject premises and provides as follows: “8. During the lifetime of the wife, she shall have sole use and occupancy of the marital home located at 84-51 Beverly Road, Kew Gardens, New York. Upon the death of the wife, the husband shall be entitled to sole use and occupancy of the marital home. It is understood and agreed that the monthly payment of alimony to the wife in the sum of $250.00 shall be applied by the wife towards payment of the monthly rental due on said marital home, as same becomes due. The husband agrees to pay to the wife as additional alimony, such amount as the landlord increases the monthly rental over *56 the amount in effect as of the date of the execution of this agreement.”
Based upon said paragraph, it was clearly the intent of the parties that Walter was to retain a right of occupancy to the apartment. Although as a consequence of the agreement he could not physically occupy the apartment until Selma’s death, from a legal standpoint he nevertheless remained a “tenant in occupancy” as contemplated by the statute.
The fact that there is no lease agreement and that Selma paid the rent and the bills is irrelevant to the court’s determination. ' Even assuming, arguendo, that both parties were named on the expired lease (though the form notice sent by Department of Housing Preservation and Development, Office of Rent and Housing Maintenance, Rent Control Division, for an increase in the 1982-1983 base rent lists only W. Hohenstein as the tenant), the leasehold is a property right, distribution of which was provided for by the separation agreement.
In that regard the court notes that the language used in paragraph 8 of the agreement gave to Selma a life estate in the subject premises. Walter was given a future estate which would take effect only if Selma predeceased him. Although under the old common law Walter’s lesser future estate would have been consumed by Selma’s greater freehold interest, under our present statutory scheme, Walter was given a valid future estate. “In the common law view of estates, a life estate (historically a freehold estate) was regarded as being greater than any estate for years (historically an estate less than freehold). Thus, if A owned a lease in Blackacre for 100 years and attempted to transfer Blackacre to B for life, remainder to C and his heirs, C took nothing. A would be deemed to have transferred his entire term to B because B’s life estate being greater than A’s estate for years would be deemed to consume it. After the Statute of Wills, the foregoing disposition was sustained as an executory devise, but the validity of the disposition when made inter vivas was never recognized. To make the validity of the disposition depend exclusively upon the testamentary or inter vivas character of the instrument in which it was contained seemed an anachronism to the Revisers of 1830 who changed that rule by the predecessor of the present section in an effort to produce that uniformity in the law which it was their objective to attain. If the foregoing disposition were to be made today, under this subparagraph C would have a valid future estate which would take effect in possession upon the death of B prior to the expiration of A’s term. (See 1 American Law of Property 412).” *57 (Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-3.3, p 66.)
Therefore, by the terms of the agreement, Selma could obtain no more than a life estate while Walter was alive. If Selma were permitted to subscribe for the shares allocated to the subject premises, Walter would be deprived of his valid future estate. Based upon a clear reading of the agreement this was not the intent of the parties. It is clear that the parties not only sought to ensure Selma a place to live, but contemplated a situation wherein Walter would move back into the subject premises if Selma predeceased him.
The contention advanced by plaintiff Weinstein, that she has a right of occupancy as a result of Selma’s tenancy, has no basis in law or fact and is completely without merit.
CPLR 3212 (b) provides in pertinent part: “If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion.”
Having resolved the only questions of fact in favor of defendant Walter Hohenstein, the court, pursuant to CPLR 3212 (b) awards summary judgment to defendant Walter Hohenstein.
The sponsor is directed to accept defendant Walter Hohenstein’s payment and signed subscription agreement nunc pro tune and specifically perform pursuant to the plan.