OPINION OF THE COURT
Jack Turret, J.
In this divorce proceeding, the testimony taken of the plaintiff wife on March 13, 1985 established her cause of action for a constructive abandonment against defendant husband. The plaintiff wife is granted a judgment of divorce in accordance with Domestic Relations Law § 170 (2). The issues as to distribution of tangible personal property, pension rights, individual retirement account (I.R.A.) and Keogh Plan accounts were settled by stipulation of the parties entered into on the record on February 15, 1985.
These questions remain: (1) what distribution, if any, there is to be of the marital residence — a cooperative apartment located *889 on the upper east side of Manhattan; (2) whether plaintiff wife is entitled to reimbursement of her share of the couple’s 1983 joint tax return refunds which she alleges her husband, without her permission, appropriated for his personal use; and (3) whether the wife is entitled to an award of counsel fees.
The facts are found as follows:
THE COOPERATIVE APARTMENT
The wife entered into the lease on the apartment in question on January 1, 1978. The parties were married on November 9, 1979. The apartment was the marital residence. The lease for the apartment was at all times in the name of the wife. Renewal occurred at least twice during the course of this marriage. On November 14, 1983, an offering plan for cooperative ownership of the apartment was served on all tenants. The parties attended tenants’ meetings together as to this conversion and had numerous conversations on the subject. A check was drawn on a joint bank account of the parties to the tenants’ committee for legal fees. The wife subscribed to the apartment in her name. It is her contention that she always intended to acquire ownership in her name solely. The funding necessary for this purchase was obtained by the wife through a mortgage in her name from Manhattan Savings Bank in the amount of $20,000 and funds furnished by her father in the amount of $5,234. The total purchase price of the apartment was $24,688.35 not including the cost of securing the mortgage, closing costs, etc. The closing on the purchase took place on April 12, 1984 after commencement of this action. Both parties remained in residence. The parties stipulated in open court that, in any event, whether this court determined that the subject apartment was marital or separate property, the defendant husband would vacate the apartment by June 30,1985. If the apartment was found subject to distribution, payment would be deferred for three years. A determination as to the time for distribution and the period during which the wife might enjoy use and occupancy are rendered unnecessary (see, Domestic Relations Law § 236 [B] [5] [f]).
General Business Law § 352-eeee (2) (d) in pertinent part reads: “(ix) The tenants in occupancy on the date the attorney general accepts the plan for filing shall have the exclusive right to purchase their dwelling units or the shares allocated thereto for ninety days after the plan is accepted for filing by the attorney general”. The plaintiff wife relies on Burns v Burns (113 Misc 2d 229, affd sub nom. Burns v 50 E. 83rd St. Corp., 90 AD2d 706, affd 59 NY2d 784) in support of her position that her *890 husband, is not entitled to any distribution with regard to this apartment. Burns (supra), defining “tenants in occupancy”, holds that a spouse, who alone signed the lease and pays the rent, is solely entitled to purchase the shares allocated to the apartment under the plan for conversion to cooperative ownership. In this case, the nonlessee is the husband. In many marriages, there is still adherence to the principle that the husband as “breadwinner” should hold the assets in his name. In most other cases, it would be the wife who would be affected by an adverse precedent. This is not the spirit and intent of equitable distribution.
Legislatures have sought to protect the “other” spouse. Spouses in possession along with the lessee are afforded certain rights in various instances: (1) a surviving spouse has a right to continue in occupancy whether or not named as the lessee (New York City Rent and Eviction Regulations § 56 [d]; Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, affd 61 NY2d 976; Matter of Herzog v Joy, 74 AD2d 372, 375-376); (2) where one spouse is over 62 years old and the other is the named lessee, both can enjoy possession under a noneviction plan (General Business Law § 352-eeee; Matter of Belmont E. Co. v Abrams, 123 Misc 2d 404); and (3) a married taxpayer 55 years or older or his/her spouse can receive a one time exclusion (of capital gain) upon the sale of their cooperative apartment under certain circumstances (Internal Revenue Code [26 USC] § 121 [d] [1]). A marriage and a subsequent separation agreement can affect the literal interpretation of General Business Law § 352-eeee (2) (d) (ix) regarding the exclusive right to purchase cooperative shares (Hohenstein v Hohenstein, 127 Misc 2d 53). It must be remembered also that the court “[i]n addition to the disposition of property * * * may make such order regarding the use and occupancy of the marital home and its household effects as provided in section two hundred thirty-four of this chapter, without regard to the form of ownership of such property” (Domestic Relations Law § 236 [B] [5] [f]).
The Burns case (supra) is not controlling as it was preequitable distribution (Domestic Relations Law § 236 [B]). Judge Kupferman, in his dissent addressed this (90 AD2d 706, 707, supra) saying,* “While the law on equitable distribution, which became effective July 19,1980 (Domestic Relations Law, § 236), does not apply to this matter, it must be deemed to have some impact on the approach here (cf. Foster and Freed, Family Law, 33 Syrause *891 L Rev 285, 328). A technical tenancy should not determine the disposition of the only real asset of the marriage. I would modify to declare that the husband holds the property in trust for himself and his wife as tenants in common, subject to a determination in the matrimonial action.”
The instant case under the present law requires a different ruling. The Governor’s memorandum on equitable distribution is definitive: “The bill recognizes that the marriage relationship is also an economic partnership. Upon its dissolution, property accumulated during the marriage should be distributed in a manner which reflects the individual needs and circumstances of the parties regardless of the name in which such property is held” (memorandum of Governor Carey, 1980 McKinney’s Session Laws of NY, at 1863; emphasis added).
In Komlosi v Komlosi (NYLJ, Apr. 19, 1985, p 12, cols 2, 4 [Sup Ct, NY County]), Justice Kirschenbaum, in pertinent part, said:
“Although exclusive possession of the apartment is hereby granted to the plaintiff Olga Komlosi, the court does not intend to permit her to obtain the full benefit of cooperative conversion. Such a result would be unwarranted in view of the equal contributions of the parties over a number of years toward the maintenance of the apartment as a marital residence.
“The judgment to be settled hereon shall include a provision requiring the plaintiff to promptly notify the defendant of any proposed cooperative conversion plan for 1235 Park Avenue, to permit the defendant to participate in the financing of the purchase of the apartment if the parties determine that such a purchase is feasible or advisable.”
The parties in this case at the start of their union (a second marriage for both) were faced with a choice. Where would they live? The choices were the wife’s abode, the husband’s or a new abode. They chose hers and have lived there for over five years. At the time of the marriage, the apartment was a nonassignable leasehold interest. It was only upon receipt of the “redherring” (offering plan for co-op conversion) that the right of possession became valuable property. In effect, it became an inchoate property right.
It is common knowledge that there is approximately a less than 2% vacancy rate in rental housing in New York City. Coordinately, the increase in value of cooperative apartments has accelerated at a rate of approximately 10% per year. A tenant in possession of an apartment under a cooperative offer *892 ing plan possesses a readily marketable asset. A windfall invariably occurs when the tenant sells the apartment immediately after conversion. Since this inchoate property right was “acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held” (Domestic Relations Law § 236 [B] [1] [c]), the court finds it is marital property. Any other result would be inequitable.
Had there been a “good” relationship between the parties at the time of conversion, they probably would have opted to purchase jointly or to forego the opportunity and remain as tenants. Financing was readily available. In a viable marriage the wife’s decision to retain sole ownership in her name would have undoubtedly led to strife. The wife’s forecasting the impending end of the relationship and taking steps to better her interests are not the determinative factors as to whether there should be distribution as to this cooperative apartment.
Distribution of marital property (Domestic Relations Law § 236 [B] [5] [d] [6]) requires the court to take into account, “any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party.” Even if the leasehold right was deemed the wife’s separate property, any appreciation in its value (e.g., cooperative conversion) during the course of the marriage due in part to the contributions or efforts of the other spouse would be subject to equitable distribution (Domestic Relations Law § 236 [B] [1] [d] [3]).
In Burns (supra) (presection 236 [B], added by L 1980, ch 281) the lessee spouse was successful because he signed the lease and paid the rent. In Komlosi (supra; under the new law) both spouses shared the rent. Here, despite automatic renewal in the wife’s name, the husband during the happier days of the marriage could have had his name added to the original lease. Why should a couple favor the landlord by creating additional liability on the part of the other spouse when that spouse is otherwise protected by law in respect of his occupancy?
The gain, in terms of receiving the right to purchase the cooperative shares of the apartment was attained by complying with the terms of the lease. The most important covenant on the part of the tenant was payment of the rent. The facts are that the parties “pooled” their incomes to pay all marital expenses *893 including the rent. The rent was paid from either of two joint checking accounts with the defendant husband signing virtually all checks. The court rejects plaintiff wife’s contention that the defendant husband never actually contributed to the rent. She alleges the husband merely signed the rent checks drawn on either of the parties’ two joint checking accounts to which he made minimal deposits. The actual source of the funds she alleges were salary, moneys received from her former husband, gifts to her and moneys given her by her father on a regular basis. Gifts received during the marriage may be deemed marital property (Ackley v Ackley, 100 AD2d 153,155-156, and cases cited therein).
Examination of the various rent checks drawn on either of the two joint checking accounts, respective checking account statements, and checks drawn on the wife’s father’s account does not support the wife’s arguments. Rent checks, whether drawn on either of the parties’ joint checking accounts, more often than not, predated deposit of the father’s checks to either account. On several occasions, the father’s checks were deposited to an account other than the one the rent check was drawn on for that particular month. It is clear that the parties “pooled” their income to defray living expenses. “The parties never separated their expenses for clothing, food, entertainment or incidentals” (plaintiff’s posttrial memorandum). The insurance policy covering the apartment was in the husband’s name. In this “economic partnership” (Damiano v Damiano, 94 AD2d 132, 138), one spouse’s paying a particular expense allowed the other’s money to be available for another expense, affording both a higher standard of living than they could enjoy separately.
The role of the court under the Equitable Distribution Law is not to trace the path of each dollar spent by the spouses to make them whole. Rather, it is to see equity is done in distribution. The guidepost is well expressed in Rodgers v Rodgers (98 AD2d 386, 391) citing Governor Carey’s memorandum (op. cit.) and stating, “[u]nlike a community property regime, fairness, not mathematical precision is the guidepost * * * [A] court possesses flexibility and elasticity to mold an appropriate decree because what is fair and just in one circumstance may not be so in another”.
Guided by the fact that equitable distribution does not necessarily mean equal distribution (Cappiello v Cappiello, 110 AD2d 608, 609), the court has considered the husband earns approximately 54% more than the wife and neither party has appreciable assets now nor had they when they entered the marriage *894 (Domestic Relations Law § 236 [B] [5] [d] [1]); the relatively short duration of the marriage and the apparent good health of both parties (Domestic Relations Law § 236 [B] [5] [d] [2]); the fact that no maintenance is sought or warranted (Domestic Relations Law § 236 [B] [5] [d] [5]); the parties’ respective contributions to the “marital pool” and thus the rent (Domestic Relations Law § 236 [B] [5] [d] [6]); the character of the property (Domestic Relations Law § 236 [B] [5] [d] [7]); and the probable future financial circumstances of both parties (Domestic Relations Law § 236 [B] [5] [d] [8]); the fact that the wife’s father contributed substantially to the “marital pool” and the wife’s purchase of the cooperative shares; the wife’s actual expenditures in the purchase and the fact that the wife was originally in sole possession (Domestic Relations Law § 236 [B] [5] [d] [10]). The court finds defendant husband is entitled to 25% of the net profit after sale using the market value of the cooperative as of the date of the service of the summons herein on March 19,1984 (Domestic Relations Law § 236 [B] [1] [c]). The court adopts the reasoning in Jolis v Jolis (111 Misc 2d 965, 967-968, affd 98 AD2d 692) and Muller v Muller (116 Misc 2d 660). Distribution is to occur after satisfaction of the outstanding mortgage and the wife has recouped her actual expenditures in purchasing the cooperative shares. This is to occur within three years of the signing of the judgment entered upon this decision as per the agreement reached by the parties.
In setting the applicable market value, the court has considered the appraisals offered by the parties. Neither appraisal sets forth specific comparable sales in the area as a barometer. It may be this information is unavailable. The conversion has recently occurred. The husband’s appraisal is between $85,000 and $110,000 ($110,000 to $135,000 for professional use). The wife’s appraisal at $60,000 is more thorough in its analysis. It speaks in terms of the locale of the apartment, its layout, structure, and functional deficiencies. Under the circumstances, it seems more credible, yet low, for two-bedroom at this location. The court finds the value at $75,000.
TAX REFUNDS
It is clear that the refunds in question are marital property (Domestic Relations Law § 236 [B] [1] [c]). Those moneys were used by the husband to purchase an I.R.A. in his name and to pay for his child’s (by another marriage) camp. Though the wife may have indirectly benefited from the I.R.A. in terms of taxes owed, the husband still retains this asset. The court finds the *895 wife is entitled to 39.4% of the refunds in question (in proportion to the respective salaries).
COUNSEL FEES
No counsel fees are awarded to the wife, her resources and income are adequate to pay for her own counsel (Sementilli v Sementilli, 102 AD2d 78,91). A substantial fee has already been paid by the wife. This decision is without prejudice to such additional compensation her attorneys may be entitled to receive from their client.

 The Court of Appeals in its affirmance (59 NY2d 784) did not address this distinction.