■ DIANA P. MANOLOVICI, Appellant, v 136 EAST 64TH STREET ASSOCIATES et al., Respondents.—Order and judgment (denominated an "Order"), Supreme Court, New York County

(David Saxe, J.), entered September 6, 1985, which, *inter alia,* denied plaintiff's motion for injunctive relief, dismissed the second and third causes of action, and granted defendant C. Gerard Manolovici judgment on his counterclaim to the extent of declaring plaintiff Diana P. Manolovici and defendant C. Gerard Manolovici to be cotenants with an equal right to subscribe to purchase the shares allotted to the subject apartment, modified, on the law and the facts, to reverse the declaratory judgment that Diana Manolovici and C. Gerard Manolovici are cotenants and instead declare that plaintiff has the exclusive right to purchase the subject apartment and subscribe to the shares of stock allocated thereto, and otherwise affirmed, with costs.

As a result of the offering plan for the cooperative conversion of 136 East 64th Street, plaintiff former wife and defendant former husband seek to adjudicate their competing claims to the exclusive right to purchase the shares allocated to apartment 9A, the former marital residence, at which only the plaintiff and the two children of the marriage have resided since 1978.

The parties were married in 1967 and moved into the subject premises in 1968 under a lease executed in the husband's name alone, and subsequently renewed in his name. In 1973, the parties separated and the husband moved out, relinquishing all rights to the apartment in the separation agreement executed at that time. In 1974, the apartment became subject to rent stabilization by virtue of the Emergency Tenant Protection Act (L 1974, ch 576, § 4). On April 30 of that year, the lease was renewed, in plaintiff's name only, for the period from June 1, 1974 through May 31, 1977. Later in 1974, the parties reconciled their marital difficulties and the husband moved back into the apartment. In 1977, the lease was renewed in the names of both parties for the period from June 1, 1977 through May 31, 1980.

Marital discord developed once again and in early 1978 the husband again left the family. He resigned his job in New York and, in February 1978, he commenced working in California, moved there and eventually purchased a home in Los Angeles. Shortly thereafter a "red herring" prospectus for an "eviction plan" cooperative conversion of 136 East 64th Street was distributed. The offering plan was accepted for filing by the Attorney-General on September 6, 1979.

Meanwhile, in 1978, the husband had commenced an action for judicial separation in which the wife counterclaimed for

divorce. After trial, a stipulation of settlement was entered into which was incorporated in, but not merged with, the final judgment of divorce entered September 8, 1980. The parties left open the issue of the subject apartment and intentionally included no reference to the apartment in the settlement of this preequitable distribution divorce. However, it would appear that the financial terms of the settlement contemplated that plaintiff would continue to reside in the apartment.

Many tenants of the building at 136 East 64th Street were dissatisfied with the terms of the cooperative offering plan and protracted litigation regarding the offering ensued. At the outset plaintiff wife executed a "no-buy pledge" and consequently did not subscribe to purchase the shares for the apartment in which she alone resided with the two children. Much later, in January 1981 and after a sixth amendment to the plan was filed, defendant husband tendered a subscription agreement to the sponsor purporting to exercise his rights. However, during a proceeding in 1981 in the litigation to determine whether the requisite 35% of the tenants had subscribed, Justice Fraiman stated that "the husband doesn't have any right to purchase the apartment" and ruled that the husband's subscription could not count towards the calculation of 35% tenant subscription. In 1982, the offering expired and the sponsor returned down payments to subscribers, including the husband, and issued a renewal lease for the apartment exclusively in the wife's name.

The tenants' litigation concerning the cooperative conversion continued until 1984 when it was finally settled. Following the settlement, a ninth amendment to the plan was offered, on December 21, 1984, pursuant to which residential tenants in occupancy on the date of the presentation of the original plan (Sept. 6, 1979) were given the exclusive right for a 30-day period to purchase their apartments. Pursuant thereto, plaintiff wife executed a subscription agreement and tendered the down payment, but was rejected by the sponsor. Defendant husband claims to have ratified and reaffirmed his original subscription agreement. The instant action followed.

In this action, plaintiff variously seeks a declaration that she is exclusively entitled to purchase the subject apartment, an injunction restraining the defendants from interfering in any manner with her right to occupy the apartment and to purchase it, damages for tortious interference with her contract rights, and attorney's fees.

The exclusive right to purchase the shares allocated to rent-stabilized apartment in a cooperative conversion offering plan

is granted to the tenant in occupancy on the date the Attorney-General accepts the plan for filing. (General Business Law § 352-eeee [2] [d] [ix]; Code of Rent Stabilization Association of New York City, Inc. § 61 [4] [b].) As previously indicated, in this case the date when the plan for filing was accepted was September 6, 1979.

Special Term held that both plaintiff and defendant were cotenants with an equal right to subscribe to the shares in issue. Its determination was predicated on the fact that both parties were originally named on the lease in effect at the time the offering was filed, relying on *Burns v Burns* (113 Misc 2d 229, *affd sub nom. Burns v 500 E. 83rd St. Corp.,* 90 AD2d 706, *affd* 59 NY2d 784). In *Burns,* a former husband, who had left the premises during a preequitable distribution marital dispute, was held the "tenant in occupancy" entitled to purchase the cooperative shares to the marital apartment. Significantly, that conclusion was based on factual findings that the husband alone remained the named tenant on the lease, that only he continued to pay the rent throughout, that his other residences were temporary abodes, that the wife at no time paid or contributed to the payment of the rent nor had any obligation to do so, that the wife was without the necessary means to continue to occupy the apartment and that neither party sought to acquire the apartment for residential purposes.

Clearly, the facts in the instant case fall into a wholly different pattern. Here, plaintiff wife has exclusively lived in the apartment since 1978 and has paid the rent during that entire period, save for two months in 1978. Defendant husband's claim that prior to the divorce he in effect paid the rent because he voluntarily sent plaintiff money for her support does not override the fact that plaintiff undertook the obligation to pay the rent and that, in fact, it was she who paid the landlord with her own checks, thus evidencing her occupancy. Moreover, defendant's claim of voluntary support payments is belied by the 1979 interim order in the divorce action directing him to make weekly support payments, retroactive to November 1978.

Most significant, also, is the fact that the plaintiff intends to *continue* to reside in the apartment, while the husband permanently left it in 1978. This court recently determined that in evaluating competing claims to the status of "tenant in occupancy" in actions concerning the right to purchase a cooperative apartment "resolution of the issue should turn on a practical analysis of the relationship of the competing parties

to the demised property, not necessarily on whose name happens to appear on the lease". (*McSpadden v Dawson,* 117 AD2d 453, 457.)

In the instant case, the defendant husband has had no real contact with the apartment at any time since 1978, including on the crucial date of September 6, 1979, the time of the filing of the offering plan. When the parties separated for the first time, in 1973, it was the husband who sought housing elsewhere and the wife who maintained a nexus to the premises. When the parties finally separated in 1978, the husband left his job in New York, obtained an interest in a company in California, and worked and bought a home there. He showed no interest in the apartment until January 1981, when he sought to tender a subscription agreement. When the husband returned to New York in 1982, he purchased a four-bedroom cooperative apartment on East 94th Street where he now permanently resides. He has had no physical presence in the subject apartment, as an occupant, since 1978, and certainly has never demonstrated any intent to return since that date. In that regard, it is interesting to note that since the entry of the instant order declaring rights of cotenancy, and the joint purchase of the apartment thereunder, the husband has moved for partition of the property. Nothing more clearly evidences the defendant's complete absence of an intention ever to occupy the property.

In sharp distinction is the nature of the plaintiff's relationship to this apartment that has been her home for the past 18 years. At the time of the filing of the offering plan in September 1979, she was in exclusive physical occupancy of the apartment, was paying the rent and became intimately involved in the building-wide litigation relative to the cooperative conversion offering from the inception, at all times asserting her rights as the tenant in occupancy. She has continued to live in the apartment up to the present time, with the earliest renewal lease after the defendant's departure being issued in her name alone, and she clearly intends to continue to maintain such residency in the future.

The facts herein compel the conclusion that plaintiff was the sole "tenant in occupancy" of the apartment in issue on September 6, 1979 and that Special Term improperly denied plaintiff's motion for a declaration that she is exclusively entitled to purchase the subject apartment. Accordingly, we modify the order of Special Term to so declare. Concur—Sullivan, Carro, Rosenberger and Ellerin, JJ.

Kupferman, J. P., dissents in a memorandum as follows:

Pursuant to a well-reasoned approach, Judge Saxe directed the purchase by the parties, with each paying one half of the subscription price.

Prior to the time the husband moved to California, the lease, for the period 1977 through 1980, was in the names of both parties. When the final judgment of divorce was entered in 1980, although the wife got the furniture, the stipulation of settlement was silent as to rights in the apartment. Obviously, with two children to care for, the wife could continue to reside in the apartment. In this aspect, the matter is similar to the case of *Burns v 500 E. 83rd St. Corp.* (59 NY2d 784) *(see also, Zuch v Zuch,* 117 AD2d 397; *Palazzo v Palazzo,* 121 AD2d 261).

The only aspect which would give pause, in affirming the determination at Special Term, is the fact that the husband has moved for partition. The obvious intent of the parties was that the wife remain in possession as part of the marital split-up. However, this does not derogate from the husband's continued interest in the premises. The husband supplied the alimony from which rent was paid, and after he had gone to California, where his wife refused to join him, he made several monthly direct payments to the landlord, e.g., he paid for January and February 1979.

The wife's interest in remaining as a tenant in the premises (as distinguished from complete ownership of the co-op) can be evinced in a modification of the divorce decree. I would affirm the determination at Special Term.