In the Matter of HERBERT B. EVANS, as Chief Administrative Judge of the Unified Court System of the State of New York, Respondent, v HAROLD R. NEWMAN et al., Individually and as Members of the Public Employment Relations Board of the State of New York, et al., Appellants. NEW YORK STATE COURT OFFICERS ASSOCIATION et al., Intervenors-Appellants.

Third Department, December 6, 1979

## APPEARANCES OF COUNSEL

*Martin L. Barr (Anthony Cagliostro* of counsel), for appellants.

*Phillips, Nizer, Benjamin, Krim & Ballon (Albert H. Blumenthal* of counsel), for New York State Court Officers Association, intervenor-appellant.

*Dretzin & Kauff, P. C. (Adam Blumenstein* of counsel), for James R. Hannon, intervenor-appellant.

*Stephen G. Crane (Michael Colodner, Norma Meacham Crotty* and *Patricia P. Satterfield* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

Petitioner is the Chief Administrative Judge of the Unified Court System of the State of New York. Appellant Public Employment Relations Board (PERB) is a State agency created pursuant to article 14 of the Civil Service Law. Intervenors-appellants New York State Supreme Court Officers Association, New York State Court Clerks Association, and the Court Clerks Benevolent Association (Unions) are the jointly certified collective bargaining representatives for approximately 2,500 court clerks and court officers employed by the Unified Court System within the City of New York. Intervenor-appellant James R. Hannon has appeared individually and as president of the New York State Supreme Court Officers Association.

On December 1, 1978, the Unions filed an improper practice charge, pursuant to section 209-a of the Civil Service Law and Part 204 of PERB's Rules of Procedure (4 NYCRR Part 204), charging that petitioner's predecessor and the Director of Employee Relations of the State Office of Court Administration (hereinafter jointly OCA) had violated their duty to negotiate in good faith with respect to various association demands.

OCA responded that the Unions' demands were not mandatorily negotiable and, on January 3, 1979, it filed its own improper practice charge, alleging that the Unions failed to negotiate in good faith by insisting upon the negotiation of nonmandatory subjects.

On August 16, 1979, after proceedings were duly had before PERB, PERB rendered a decision holding that classification is primarily the exercise of a governmental mission and not a mandatory subject of negotiation. Nevertheless, it also ruled that the allocation of positions to salary grades was a mandatory subject of negotiation. PERB further directed that both sides negotiate in good faith.

On August 20, 1979, petitioner commenced the subject article 78 proceeding, seeking to vacate that portion of PERB's determination which ruled that allocation to State-paid salary grades was a mandatory subject of negotiation. Special Term

sustained the petition concluding that "[a]llocation of job classifications to salary grades is a matter which the Legislature has specifically entrusted to the Administrative Board of the Judicial Conference." (100 Misc 2d 207, 209.) In arriving at this result, Special Term reasoned that subdivision 8 of section 39 of the Judiciary Law was clear and unambiguous; that the process of collective negotiation would tend to undermine the goals sought to be attained by unification of the court system; and that unilateral allocation of salary grades would not deprive the unions of their rights under the Taylor Law (Civil Service Law, art 14) since individual salaries within the salary grades will remain a subject of negotiation along with other terms and conditions of employment. In its decision Special Term also dismissed as premature certain counterclaims asserted by the Unions.

■ Article 14 of the Civil Service Law (Taylor Law) applies to nonjudicial employees in the Unified Court System *(McCoy v Helsby,* 34 AD2d 252, affd 28 NY2d 790). Pursuant to article 14, an employer is required to negotiate terms and conditions of employment (Civil Service Law, § 204, subd 2; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122, 127). The phrase " 'terms and conditions of employment' means salaries, wages, hours, agency shop fee deduction and other terms and conditions of employment", less certain topics not germane to this appeal (Civil Service Law, § 201, subd 4). It is an improper labor practice for a public employer or employee organization to refuse to negotiate in good faith (Civil Service Law, § 209-a, subds 1, 2).

■ PERB has been granted the authority to resolve disputes arising out of negotiations (Civil Service Law, § 209). "Inherent in this delegation is the power to interpret and construe the statutory scheme. Such construction given by the agency charged with administering the statute is to be accepted if not unreasonable [citations omitted]." *(Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46, 51.)

Unless we find legislative authority for PERB's determination that the allocation of positions to State salary grades relates primarily to terms and conditions of employment and not to the formulation or management of public policy, we must affirm Special Term. In resolving this question, an examination of the relevant statutes, legislative reports and memoranda is necessary.

We have reviewed section 39 (subd 6, par [a]; subds 7, 8) of the Judiciary Law, and conclude that, on its face, section 39 is not dispositive of the issue. We, therefore, go further.

Historically, management in the executive branch unilaterally determined the allocation of positions to salary grades prior to the enactment of the Taylor Law (see *Matter of Corrigan v Joseph,* 304 NY 172, 180-183, where the Court of Appeals noted the close relationship between classification and allocation).

After enactment of the Taylor Law, allocation remained outside the terms and conditions of employment in the executive branch. Section 24 of chapter 158 of the Laws of 1970 provides: "Upon the report of the Select Joint Legislative Committee to conduct the hearing in the matter of the dispute between Council 82, A.F.S.C.M.E., and the state of New York and the public hearings held on the report of the fact-finding board, the legislature finds and declares that allocations and reallocations to salary grades of positions in the classified service of the state are not terms and conditions of employment under article fourteen of the civil service law. The legislature further finds and declares that such allocations and reallocations are not within the scope of a fact-finding board but are to be accomplished exclusively pursuant to the provisions of article eight of the civil service law."

Appellants and intervenors argue that the legislative finding in section 24 applies only to the executive branch of government since the second sentence of the section makes reference to article 8 of the Civil Service Law and article 8 does not apply to the judicial branch of government. We disagree. The Legislature indicated that the two conclusions are not dependent on each other when it employed the language "[t]he legislature *further* finds" in the second sentence above (emphasis added). The quoted language should be given meaning and we conclude, therefore, that the first stated finding is separate and independent from the second finding.

The Report of the Select Joint Legislative Committee, upon which section 24 of chapter 158 is based, is supportive of the above conclusion. This report,* insofar as pertinent, states:

"On the major issue of whether salary grade allocation is negotiable under article 14 of the Civil Service Law, we are persuaded that this matter was not intended to be and should

* Unpublished.

not be within the scope of collective negotiations, nor within the purview of factfinders' considerations, but rather is exclusively controlled by Article 8 of the Civil Service Law which establishes the administrative procedures for determining such allocations.

"Article 8 of the Civil Service Law sets out carefully the detailed procedure for insuring that job titles in the Civil Service system are allocated appropriately to salary grade positions, taking into consideration all relevant circumstances which bear upon job evaluation. This system is intended to be administered by the Director of Classifications and Compensation impartially and without undue pressures of competing interests, in order to insure that such job title-salary relationships shall be fair and equitable. In our view, it was not the intention of the Legislature in adopting Article 14 of the Civil Service Law to abrogate in any fashion the exclusive responsibility of the Director in this area or to disrupt the delicate relationships among the thousands of job titles in the system. In essence, the Article 8 policy of establishing equal pay for equal work was not intended to be subject to the vicissitudes of the collective negotiations process."

While the quoted report makes it clear that the Legislature was interested in maintaining the independent duties of the Director of Classifications and Compensation, it also reveals that it was interested to a significant degree in avoiding the disruptions of the delicate relationships existing among job titles which would result from fluctuations inherent in collective bargaining.

The Legislature, in its statement of Legislative Findings and Purposes in enacting section 39 of the Judiciary Law makes clear that, in addition to eliminating the burden upon local governments of financing the courts, its goal in establishing the Unified Court System was to "enable the allocation of moneys and manpower when needed" and to "ensure that the limited resources available for courts are allocated according to need and utilized effectively" (L 1976, ch 966, § 1).

While this legislative statement is largely devoted to fiscal considerations, it also is concerned with allocation of manpower as the need arises, a goal that would be significantly hampered if negotiation over allocation to salary grades was mandatory. A construction inconsistent with the purposes of the statutory scheme should be avoided.

We note that pursuant to subdivision 2 of section 37 of the

Judiciary Law (formerly Judiciary Law, § 219), the Administrative Board unilaterally determined the salary grade allocation for each State-paid nonjudicial position in the court system in 1972. This fact is further evidence that the Legislature did not intend allocation to be negotiable. " 'Where the practical construction of a statute is well known, the Legislature is charged with knowledge and its failure to interfere indicates acquiescence' *(Engle v Talarico,* 33 NY2d 237, 242)" *(Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, 9, mod on other grounds 39 NY2d 920).

■ Moreover, the Legislature has indicated that standards and policies concerning title structure, job definition, *et cetera,* and personnel practices relating to nonjudicial personnel are to be consistent with the Civil Service Law (Judiciary Law, § 211, subd 1, par [d], as added by L 1978, ch 156, § 7; former § 212, subd 1, repealed by L 1978, ch 156, § 6; *Matter of Goldstein v Lang,* 23 AD2d 483, 485-486 [dissent], revd upon dissenting opn 16 NY2d 735). Thus, a legislative intent to apply the policy finding contained in the Report of the Select Joint Legislative Committee *(supra)* to nonjudicial employees is evident. Based on the findings of that report and on section 24 of chapter 158 of the Laws of 1970, PERB's argument that collective negotiation over allocation is not inconsistent with the Civil Service Law is without merit. While article 8 of the Civil Service Law does not apply to nonjudicial employees, these employees are to be treated consistently with the Civil Service Law *(Matter of Goldstein v Lang, supra).*

Finally, PERB's contention that application of section 24 of chapter 158 of the Laws of 1970 would amount to a windfall to OCA since OCA is not subject to article 8 of the Civil Service Law is rejected. OCA has set up an appeal procedure which obviates the threat of a windfall to OCA. The employer or employee organization dissatisfied with his or its members' job allocation to salary grade may appeal to a classification review board consisting of three members appointed independently by government agencies outside the court system. Adverse review board decisions may then be challenged in an article 78 judicial proceeding (see *Corkum v Bartlett,* 46 NY2d 424, 431).

Allocation of positions to salary grade is primarily related to a "mission" of an employer and not to terms and conditions of employment. PERB was in error when it determined otherwise.

The Unions' contention, raised in a counterclaim, that petitioner violated section 39 of the Judiciary Law in allocating union members to salary grades is without merit. The Unions alleged that at least 60% of their members have been "maxed out" of increments to which they had become entitled by virtue of their existing contracts. An employee would have been "maxed out" when he was slotted to a salary grade, the maximum of which was below his existing salary when he had not already achieved the maximum salary range before allocation. Thus, the Unions argue, the employees are "maxed out" when they cannot attain the salaries to which they were entitled pursuant to contracts in effect on March 31, 1977.

■ We do not construe section 39 (subd 6, par [a]) of the Judiciary Law to entitle the employees who are in "maxed out" situations to additional increments above their allocated salary grade. To do so would substantially hamper effective reorganization of the court system by increasing overpayment disparities among employees and by continuing the salary anomalies which arose out of the local government units' inability to finance court operations. The result would be inconsistent with legislative purposes.

We have examined the Unions' remaining contentions and find no reason to disturb the ruling of Special Term as to those matters.

The judgment should be affirmed, without costs.

SWEENEY, J. P., KANE, STALEY, JR., MIKOLL and HERLIHY, JJ., concur.

Judgment affirmed, without costs.