[629 NYS2d 532]

In the Matter of TIMOTHY DREW, as Local President of the Schenectady County Office of Court Administration Local 333 of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, et al., Respondents, v SCHENECTADY COUNTY et al., Appellants, and NORMA MEACHAM, as Director of Employee Relations of the Office of Court Administration, et al., Respondents.

Third Department, July 20, 1995

## APPEARANCES OF COUNSEL

*Thomas B. Hayner,* Schenectady *(Nicholas E. Tishler* and *Robert E. DePaula* of counsel), for Schenectady County and another, appellants.

*Janna Pfluger* and *Nancy E. Hoffman,* Albany, for Timothy Drew and others, respondents.

*Michael Colodner,* New York City *(John Eiseman* of counsel [Office of Court Administration]), for Norma Meacham and others, respondents.

## OPINION OF THE COURT

MERCURE, J.

Prior to the April 1, 1977 transfer of court personnel to the State payroll under the terms of the Unified Court Budget Act of 1976 (L 1976, ch 966; *see,* Judiciary Law § 39) and, in fact, up until October 1992, all court employees working in Schenectady County were provided free parking spaces in County-owned parking lots. In April 1993, however, respondent Schenectady County implemented a new parking system whereby court personnel employed by the County prior to April 1, 1977 were provided free parking in a lot located two blocks from their offices, but no parking was provided for court personnel hired after that date. In 1993, petitioners, nonjudicial personnel of the Office of Court Administration employed in Schenectady County and their collective bargaining representative, commenced this CPLR article 78 proceeding seeking a judgment directing the County and respondent County Manager (hereinafter collectively referred to as the County) to continue to provide petitioners with free parking spaces. Finding, *inter alia,* that the County's new parking system violated Judiciary Law § 39 (3) (a), Supreme Court granted judgment in favor of petitioners, directing the County to "immediately provide free, accessible and convenient parking spaces for *all* Court employ-

ees in Schenectady County, regardless of date of hire". The County now appeals.

We affirm. The only issue that need be considered is whether Supreme Court was correct in its determination that the proceeding is governed by the provision of Judiciary Law § 39 (3) (a) that *"all goods, services and facilities* presently furnished and paid for by any political subdivision to the courts and court-related agencies affected by this section * * * shall continue to be furnished and paid for by the political subdivision" (emphasis supplied). We note that the Judiciary Law provides no definition for "goods, services and facilities", and we find no case law or legislative memoranda casting any light on the issue of whether parking spaces constitute court facilities within the purview of Judiciary Law § 39 (3) (a). It is our view, however, that the provision of parking spaces for court employees falls far more logically within statutes and regulations governing court facilities *(see,* Judiciary Law § 39 [3] [a]; 22 NYCRR 34.0 [V.8]; 34.1) than those dealing with the terms and conditions of employment *(see,* Judiciary Law § 39 [6] [a]). Moreover, applying the familiar standard of review that, unless irrational, unreasonable or inconsistent with the governing statute, the interpretation given a statute by the agency charged with its enforcement is to be given great weight and judicial deference *(see, Matter of 172 E. 122 St. Tenants Assn. v Schwarz,* 73 NY2d 340, 348; *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166, 173), we perceive no basis for annulling the interpretation given Judiciary Law § 39 (3) (a) on behalf of respondent Chief Administrative Judge, who has been granted responsibility for supervising the administration and operation of the courts *(see,* NY Const, art VI, § 28 [b]; 22 NYCRR 1.0).

Contrary to the conclusion reached by the dissent, our decision is founded upon our own judicial construction of Judiciary Law § 39 (3) (a), which accords with that reached by Supreme Court and propounded by the Chief Administrative Judge. In any event, the dissent offers no authority for the novel theory that no deference may be afforded an agency interpretation that is advanced during the course of litigation. Finally, we also note that although the dissent criticizes our supposed abdication of judicial responsibility at some length, it never does make its own construction of the statute.

The County's remaining contention has not been preserved for our consideration.

PETERS, J. (dissenting). We respectfully dissent.

The majority bases its determination primarily upon the concept of deference to the interpretation of Judiciary Law § 39 (3) (a) and the regulations promulgated in response thereto (see, 22 NYCRR 34.0 [V.8]; 34.1) propounded by respondents Unified Court System, its Chief Administrative Judge and the Director of Employee Relations of the Office of Court Administration (hereinafter collectively referred to as the court respondents) as the "agency charged with its enforcement". Mindful of the fact that the court respondents did not render a determination on this issue prior to the commencement of litigation, that the statute and regulations under review are ambiguous and that the court respondents became involved herein by interposing a cross claim against the county respondents, we find that this is not a situation where the underlying principles requiring judicial deference to an agency determination are present (see, Matter of Judd v Constantine, 153 AD2d 270, 272-274). Furthermore, we find the administrative interpretation of the statute inconsistent with legislative history and disagree with the majority's determination that the Chief Administrative Judge is solely cloaked with authority to interpret statutes relevant to the issue before us (cf., Matter of Scoralick v Milonas, 207 AD2d 159). If, as the majority contends, the provision of parking spaces for court employees falls within statutes and regulations governing "court facilities", we believe we must look to the Public Authorities Law as well as the Judiciary Law for guidance.

In enacting chapter 825 of the Laws of 1987 concerning construction and improvement of court facilities, the Legislature did not envision that the Chief Administrative Judge would be imbued with sole authority to *enforce* statutes and regulations governing court facilities. Rather, it authorized and empowered the court facilities capital review board to "review and approve overall plans and cost estimates for the design, acquisition, construction, reconstruction, rehabilitation, improvement, furnishing or equipping of facilities of the courts * * * of the unified court system" and particularly expected agreement by and between the Chief Administrative Judge and the "chief executive officer of the political subdivision" concerning such matters (Public Authorities Law § 1680-c [3]; *see generally,* Public Authorities Law § 1680-c *et seq.*).

The term "court facilities", defined by chapter 825 of the Laws of 1987, was included as part of the Public Authorities

Law and not the Judiciary Law *(see,* Public Authorities Law § 1676 [25]).* Legislative, executive and judicial memoranda penned simultaneously with the enactment of chapter 825, coupled with the provisions thereof, reflect the Legislature's intent that the Office of Court Administration not be solely empowered to *interpret* this term. Even the Rules of the Chief Judge indicate that the Chief Administrative Judge is charged with the responsibility to "encourage" compliance with court facility guidelines (22 NYCRR 34.0).

Mindful that on occasion the Chief Administrative Judge may be required to act if a political subdivision has "ceased or failed to provide goods, services or facilities" (Public Authorities Law § 1680-c [4]), the Legislature enacted Judiciary Law § 39-a to provide for mediation of disputes concerning, *inter alia,* court facilities.

As we find little basis to rely on any special competence or expertise of the court respondents concerning the subject matter of employee parking, our obligation of statutory interpretation remains unaffected *(see, Debevoise & Plimpton v New York State Dept. of Taxation & Fin.,* 80 NY2d 657; *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451). Where, as here, "the meaning of a statute is in dispute, there remains at the core the same common-law process of discerning and applying the purpose of the law. * * * '[C]ourts have not only a law-*finding* function * * * but [also] * * * a law-*making* function that engrafts on the statute meaning appropriate to resolving the controversy' " (Kaye, *State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions,* 70 NYU L Rev 1, 25 [1995], quoting Dickerson, *Statutory Interpretation: Dipping Into Legislative History,* 11 Hofstra L Rev 1125, 1127-1128).

"Freedom to construe is not freedom to amend" *(Matter of Evans v Newman,* 100 Misc 2d 207, 209, *affd* 71 AD2d 240,

---

* Court facilities is defined in Public Authorities Law § 1676 (25) as follows: "facilities suitable and sufficient for the transaction of business by the state-paid courts and court-related agencies of the unified court system and the judicial and nonjudicial personnel thereof, including rooms and accommodations for the courts of the unified court system, the judges, justices and the clerical, administrative and other personnel thereof, law libraries, conference rooms or centers, facilities for the temporary detention of persons in connection with appearance or production in court when the court is in session, any other necessary or desirable facilities incidental to the operation or administration of the unified court system, fixtures, furnishings or equipment in connection therewith and buildings and improvements used for the foregoing."

*affd* 49 NY2d 904) and therefore we find no basis in the statutory scheme which would require us to impose upon county government the economic burden of providing free parking to all court employees. We would accordingly reverse the judgment of Supreme Court.

CREW III and YESAWICH JR., JJ., concur with MERCURE, J.; PETERS, J., and MIKOLL, J. P., dissent in a separate opinion by PETERS, J.

Ordered that the judgment is affirmed, without costs.