Matter of Adirondack Wild: Friends of The Forest Preserve v New York State Adirondack Park Agency (2018 NY Slip Op 03193)





Matter of Adirondack Wild: Friends of The Forest Preserve v New York State Adirondack Park Agency


2018 NY Slip Op 03193


Decided on May 3, 2018


Appellate Division, Third Department


Rumsey, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

525165

[*1]In the Matter of ADIRONDACK WILD: FRIENDS OF THE FOREST PRESERVE et al., Appellants,
v
NEW YORK STATE ADIRONDACK PARK AGENCY et al., Respondents.

Calendar Date: February 22, 2018

Before: Garry, P.J., McCarthy, Devine, Mulvey and Rumsey, JJ.


Hannah Chang, Earthjustice, New York City, for appellants.
Eric T. Schneiderman, Attorney General, Albany (Loretta Simon of counsel), for respondents.


Rumsey, J.

Appeal from a judgment of the Supreme Court (Ceresia, J.), entered January 31, 2017 in Albany County, which, among other things, dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Department of Environmental Conservation approving a plan permitting the construction of a new snowmobile corridor.
In 2012 and 2013, the state acquired two tracts of land in the Adirondack Park — the 18,100-acre Essex Chain Lakes parcel and the 960-acre Indian River parcel — and incorporated them into the Forest Preserve. Adjacent areas of state-owned land were then reclassified and combined with the newly-acquired parcels to
form the Essex Chain Complex Area (hereinafter the Complex Area). Thereafter, as required by Executive Law § 816, respondent Department of Environmental Conservation (hereinafter DEC), in consultation with respondent Adirondack Park Agency (hereinafter APA), developed an individual management plan for the Complex Area. In November 2015, the APA determined that the final Essex Chain Lakes Management Complex Unit Management Plan (hereinafter the Complex Plan) complied with the Adirondack Park State Land Master Plan (hereinafter the Master Plan), and, in March 2016, DEC approved the Complex Plan.
Petitioners thereafter commenced a combined CPLR article 78 proceeding and [*2]declaratory judgment action to challenge the Complex Plan to the extent that it permits construction of a new snowmobile corridor in the Complex Area. Petitioners asserted four causes of action, specifically alleging that the Complex Plan (1) permits the construction of a new snowmobile bridge over a segment of the Cedar River that is designated as scenic, in violation of the Wild, Scenic and Recreational Rivers System Act (see ECL 15-2701 et seq. [hereinafter the Rivers System Act]), (2) opens the Polaris Bridge to the public for snowmobiling over a segment of the Hudson River that is designated as scenic, in violation of the Rivers System Act, (3) allows public snowmobile use on the portion of Chain Lakes Road (South) that is located within an area where the Hudson River is designated as wild, in violation of the Rivers System Act and the Master Plan, and (4) calls for the construction and establishment of a new Class II snowmobile trail connecting the hamlet of Indian Lake, Hamilton County with the hamlet of Minerva, Essex County that duplicates an existing snowmobile route that connects the same two communities, in violation of a guidance document for the siting, construction and maintenance of snowmobile trails that was adopted by DEC in 2009 (hereinafter the 2009 Guidance). In January 2017, Supreme Court dismissed the petition, concluding that the first two causes of action were not ripe for judicial review and the remaining two causes of action failed on their merits [FN1]. Petitioners now appeal.
We first consider petitioners' argument that Supreme Court erred in finding that their first two causes of action were not ripe for judicial review. We have previously held that an administrative action is final and ripe for review only when "a pragmatic evaluation reveals that the decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury," and, therefore, that an administrative action is not ripe for review "if the claimed harm may be prevented or significantly ameliorated by further administrative action" (Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d 188, 190 [2012] [internal quotation marks and citations omitted]).
In the first and second causes of action, petitioners assert that construction of a bridge over a segment of the Cedar River designated as scenic and opening the Polaris Bridge over the Hudson River to snowmobile traffic in an area that is also designated as scenic would violate the Rivers System Act, which they contend prohibits all motorized open space recreational uses in scenic river areas. However, adoption of the Complex Plan was not alone sufficient to authorize construction of the Cedar River Bridge or use of the Polaris Bridge by snowmobiles. Rather, as Supreme Court correctly noted, permits and variances must be obtained through further administrative action before the proposed uses may be established. Specifically, permits are required to erect a bridge over a scenic river (see 6 NYCRR 666.13 [E] [5] [b]) or to construct a trail within a scenic river area (see 6 NYCRR 666.13 [E] [3]). Moreover, variances are required for the use of motorized vehicles within scenic river areas (see 6 NYCRR 666.9 [d]), and for construction of a Class II snowmobile trail, to the extent that it may exceed the maximum trail width of four feet that is permitted by regulation (see 6 NYCRR 666.3 [lll])[FN2]. Permit and variance applications are governed by the Uniform Procedures Act (see ECL art 70), which [*3]imposes conditions related to the substantive relief sought and provides the opportunity for further public participation. No permit or variance may be granted unless the proposed use is consistent with the purpose of the Rivers System Act (see 6 NYCRR 666.8 [e]; 666.9 [d]), and conditions may be imposed as necessary to preserve and protect affected river resources or to assure compliance with the Rivers System Act (see 6 NYCRR 666.8 [g]; 666.9 [c]). Moreover, there is an opportunity for public comment on applications for a permit or a variance (see ECL 70-0107 [3] [c]; 70-0109 [2]), and the granting of a permit or variance may be challenged through a CPLR article 78 proceeding. Thus, inasmuch as the harms upon which the first and second causes of action are based may be prevented or ameliorated by further administrative action, Supreme Court correctly concluded that the first and second causes of action are not ripe for judicial review.[FN3]
In the third cause of action, petitioners challenge DEC's determination that the Rivers System Act permits establishment of a snowmobile trail on a segment of Chain Lakes Road (South) that is located in a wild river area as continuation of a preexisting use. In that regard, petitioners assert that the Master Plan requires that wild river areas be managed in accordance with the guidelines for wilderness areas, which, in turn, prohibit the public use of motor vehicles and motorized equipment, regardless of whether such use previously existed. Although the Rivers System Act prohibits access by motor vehicles in wild river areas, except as necessary for forest management (see ECL 15-2709 [2] [a]), it permits continuation of existing uses that are not altered or expanded (see ECL 15-2709 [2]). Petitioners contend that there is a conflict between the Master Plan and the Rivers System Act regarding continuation of preexisting motor vehicle use and that the conflict of laws provision in the Rivers System Act requires that the relevant terms of the Master Plan be applied because they are more restrictive (see ECL 15-2721).
The issue of whether there is a conflict between the Rivers System Act and the Master Plan presents a matter requiring interpretation of the language contained in each for which technical expertise or specialized knowledge is not required. Thus, we must give effect to the plain meaning of the relevant terms without deference to any interpretation made by DEC or the APA (see Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off., 151 AD3d 1532, 1535 [2017], lv granted 30 NY3d 913 [2018]). We conclude that there is no direct conflict between the Rivers System Act and the Master Plan as it relates to continuation of preexisting motor vehicle use in wild river areas located on state-owned land. The Rivers System Act provides DEC with exclusive jurisdiction over river areas located on state-owned [*4]land within the Adirondack Park (see ECL 15-2705) and also provides that DEC shall administer river areas within its jurisdiction in accordance with the Rivers System Act (see ECL 15-2709 [1]). The Master Plan recognizes the exclusive jurisdiction that has been granted to DEC by statute by acknowledging that DEC has the authority to regulate the uses of river areas located on state land "independent of the [M]aster [P]lan" (emphasis added).
Having determined that the Rivers System Act, which permits continuation of preexisting uses, is controlling, we must consider whether there was a rational basis for the determination that the use of the one-mile segment of Chain Lakes Road (South) as a portion of the proposed snowmobile connector trail is a permissible continuation of a preexisting use, without alteration or expansion. As the administrative determination here was made where a hearing is not required, "[our] review is limited to whether the determination lacks a rational basis and is, thus, arbitrary and capricious. An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. If the agency's determination has a rational basis, it will be sustained, even if a different result would not be unreasonable. We may not substitute our judgment for that of the agency responsible for making the determination, and deference to the judgment of the agency, when supported by the record, is particularly appropriate when the matter under review involves a factual evaluation in the area of the agency's expertise" (Matter of Fuller v New York State Dept. of Health, 127 AD3d 1447, 1448 [2015] [internal quotation marks, ellipsis, brackets and citations omitted]).
The record contains a rational basis for DEC's determination. As part of its investigation, DEC considered affidavits that were submitted by 17 individuals who averred that they had personal knowledge of the area that includes Chain Lakes Road (South), and that the area — including the roads located therein — have been used by snowmobiles during the winter season continuously since the 1950s. Petitioners do not contest the finding that snowmobiles have historically been used on Chain Lakes Road (South); rather, they argue that such use was limited to members of clubs that leased the surrounding property, and that opening a trail to public use would constitute an expansion of the preexisting use. Nonetheless, the record contains a sufficient basis for DEC to have rationally determined that there would be no alteration or expansion of the preexisting use of snowmobiles on the relevant portion of Chain Lakes Road (South), which had included operation by members of the public and an intensity of use commensurate with the proposed use. Four of the individuals who submitted affidavits averred — based on decades of personal experience — that snowmobiles have been operated in the relevant area by members of the general public — as specifically distinguished from members of the clubs that leased the property. One area resident asserted that, although access to the area was restricted during hunting season by gates, the gates were open and the general public was free to use the roads located in the area, including Chain Lakes Road (South), at all other times.
In contrast to the showing made by respondents, the affidavits submitted by petitioners are, to a great extent, conclusory. A local resident who was a former chair of the APA stated only that it was his "understanding" that the relevant portion of Chain Lakes Road (South) was closed to the general public. The other resident likewise stated only that "it was well known" that only members or guests of the Gooley Club could "legally" use the road and that the only public access of which he was "aware" was a response to a rafting accident that had occurred on the Hudson River. Although this resident also represented that he had encountered a locked gate at Chain Lakes Road (South), he does not state when that occurred. Thus, the determination that the historic prior use of snowmobiles on Chain Lakes Road (South) by the public would not be altered was rational.
Moreover, though it is not extensive on this point, there is likewise evidence in the [*5]record to support the determination that the construction of the proposed connector trail will not expand the prior use. The only direct evidence regarding the extent of the prior use consists of affidavits submitted by respondents from two area residents who specifically stated that such use was frequent, consistent or constant. With respect to the extent of the proposed use, DEC found that allowing snowmobiles to continue using an existing multiple use trail largely results in continuation, not an enlargement, of the prior use without creating any new substantial impacts that did not already exist. This conclusion is further corroborated by DEC's finding, in the statement of findings pursuant to the State Environmental Quality Review Act (see ECL art 8), that any potential increase in greenhouse gas emissions that may result from the proposed use would be dispersed and intermittent. Accordingly, DEC's determination in this regard has a rational basis and is thus not arbitrary and capricious.
In the fourth cause of action, petitioners assert that construction of the Class II snowmobile trail connecting Indian Lake with Minerva would violate the 2009 Guidance by duplicating an existing snowmobile trail that connects the two communities. An administrative agency's internal guidelines are not binding rules or regulations because they do not impose "fixed, general principle[s] to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]; accord Matter of City of New York v New York State Pub. Serv. Commn., 105 AD3d 1200, 1204 [2013]). The 2009 Guidance contains internal guidelines for the siting of snowmobile trails on forest preserve lands in the Adirondack Park; however, it does not commit DEC to a definite course of future action (see Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d at 190-192). Thus, Supreme Court properly dismissed the fourth cause of action on the basis that respondents are not bound by the 2009 Guidance.
McCarthy and Devine, JJ., concur.




Garry, P.J. (concurring in part and dissenting in part).


In the third cause of action, petitioners challenge the determination of respondent Department of Environmental Conservation (hereinafter DEC) that the Wild, Scenic and Recreational Rivers System Act (see ECL 15-2701 et seq. [hereinafter the Rivers System Act]) permits the construction of a snowmobile trail in a designated wild river area. For the reasons below, we conclude that DEC lacked a rational basis for finding that the snowmobile trail is a permissible continuation of an existing use pursuant to ECL 15-2709 (2). Thus, we respectfully dissent from the majority's determination as to this cause of action.
There has been little previous judicial analysis of the Rivers System Act, and this matter poses issues of first impression. The Rivers System Act declares, as our state's public policy, that rivers that "possess outstanding natural, scenic, historic, ecological and recreational values . . . shall be preserved in free-flowing condition and that they and their immediate environs shall be protected for the benefit and enjoyment of present and future generations" (ECL 15-2701 [1], [3]). To implement this policy, the statute classifies protected rivers as wild, scenic, or recreational, and creates protected corridors along their banks (see ECL 15-2711, 15-2713, 15-2714). "Wild river[s]" are defined as "[t]hose rivers or sections of rivers that are free of diversions and impoundments, inaccessible to the general public except by water, foot or horse trail, and with river areas primitive and undeveloped in nature and with development, if any, limited to forest management and foot bridges" (ECL 15-2707 [2] [a] [emphasis added]). The management of wild river areas must "be directed at perpetuating them in a wild condition" (ECL [*6]15-2707 [2] [a] [3]), and, except for purposes of forest management, "access by motor vehicles" is expressly prohibited (ECL 15-2709 [2] [a]). The statute provides that existing uses may continue in such areas, but also specifies that they "may not be altered or expanded" (ECL 15-2709 [2]).
Against this backdrop, DEC plans to construct a snowmobile trail that will connect two communities and pass, in part, over a one-mile-long portion of Chain Lakes Road (South) (hereinafter the Chain Lakes Road section), an existing road that runs through a designated wild river area. The Chain Lakes Road section and the land it crosses are part of a much larger tract of land that was owned and managed by a private company from the late 1800s until shortly before the state acquired it [FN4]. The owner developed and maintained a system of private roads throughout the property. These roads were traversed by motor vehicles operated by the owner's employees and contractors, and by the members, guests and staff of several private hunting and fishing clubs that leased parts of the land for recreational use. DEC asserts that, despite the statutory prohibition against motor vehicles in wild river areas, the use of the Chain Lakes Road section as a snowmobile trail is permissible because the previous users operated motor vehicles, including snowmobiles, on that section and other private roads in the property.
However, the record does not support a conclusion that members of the general public previously operated snowmobiles on the Chain Lakes Road section in a density commensurate with that which will result from opening it to public use. Petitioners submitted affidavits from two long-time residents of the area — one of whom is a past chair of the Adirondack Park Agency — who jointly averred that the Chain Lakes Road section has never been open to public use and that it was well known locally that the only means of gaining legal access to the road, other than employment by the owner, was to join the private club that leased the land through which it ran. One of these affiants stated that, during his residency in the community from 1994 to the present, he had encountered a locked gate closing off Chain Lakes Road (South) and signs posting the property "on many occasions." Further, no public funds had been expended to maintain the pertinent portion of the road in many years [FN5]. The previous chair further stated that, in his experience, community connector trails, such as the one proposed here, generally receive heavy snowmobile traffic that exceeds the level of use on private trails.
The affidavits submitted by DEC do not contradict these assertions. The affiants are former employees of the owner and members or affiliates of the private clubs. None of these individuals assert that the Chain Lakes Road section was legally open to the general public, nor do they describe any form of authorized access to the area other than employment or club membership; instead, they describe either the roles in which they used the roads as employees or contractors, or the years in which they had access because they belonged to or worked for the private club that leased that part of the land. Although the affidavits include a number of references to "public" use, when read in context, most of these are in fact describing use by club members and their guests — as distinguished from the owner's labor force — and some apparently describe use by trespassers. The fact that some persons who had no legal authority to enter the area may previously have taken advantage of its remote character to use it without permission should not serve as the basis for a principled determination that it should now be opened to the [*7]general public. Likewise, although one affiant stated that the private club that owned the land containing the Chain Lakes Road section closed its gates only during hunting season, the fact that some people may thus have been able to gain access to the area at other times of year cannot be considered to be commensurate with the level of use that will result from opening the road to the general public as part of a marked and mapped snowmobile corridor, established for the stated purpose of encouraging snowmobilers to travel between two communities. Examples of the private clubs' leases in the record further demonstrate the lack of access by members of the general public; among other things, the leases limited members to two guests and required clubs to post the leased areas and patrol them against trespassers. No record evidence, in the affidavits or elsewhere, contradicts these lease terms or indicates that anyone other than those affiliated with the owner and the clubs had legal access to the area.
Significantly, DEC itself makes no claim that there was previous public use of the Chain Lakes Road section. It is essentially acknowledged that the road was not previously open to the public. Instead, the argument presented is that the Rivers System Act does not require DEC to consider whether the previous use was public or private in considering whether new use of snowmobiles by the general public would cause an alteration or expansion. The majority has, by implication, apparently rejected this statutory interpretation in its stated finding that the record supports a history of prior public use. We find that the Rivers System Act requires DEC to consider the increase in volume that results from opening a previously exclusively private road to unlimited use by the public in determining whether a previous use may continue.
This Court ordinarily defers to an agency's construction of the legislation it is charged with implementing; however, it is well-established that we must do so only when "such interpretation is not irrational, unreasonable or inconsistent with the statutory scheme" (Matter of Rochester City School Dist. v New York State Educ. Dept., 31 AD3d 993, 995 [2006], lv denied 8 NY3d 805 [2007]; see Matter of 172 E. 122 St. Tenants Assn. v Schwarz, 73 NY2d 340, 348 [1989]; Matter of Drew v Schenectady County, 212 AD2d 177, 179 [1995], affd 88 NY2d 242 [1996]). DEC's contention that it may ignore the question of whether the transfer of a road from private to public use will increase the volume of the previous use is irrational and unreasonable; it disregards the statutory prohibition against the expansion or alteration of a prior use, effectively reading that language out of the statute (see generally Matter of Rubeor v Town of Wright, 134 AD3d 1211, 1212-1213 [2015], lv denied 27 NY3d 902 [2016]; McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98). Further, DEC's interpretation that it need not consider an expansion of motor vehicle traffic resulting from public use is inconsistent with the statutory scheme that defines wild river areas as "inaccessible to the general public except by water, foot or horse trail" (ECL 15-2707 [2] [a]) and with the plain legislative intent that such areas must be maintained "in a wild condition" (ECL 15-2707 [2] [a] [3]).
On this record, it is irrational to conclude that opening the Chain Lakes Road section to public snowmobile traffic will not expand the previous limited use. Although there is evidence that certain people used a variety of motor vehicles in the disputed area, including snowmobiles, it is clearly established that only a few people were authorized to do so — that is, the owner's labor force and the employees, members and guests of a private club that had paid for an exclusive lease [FN6]. Indeed, the record establishes that the purposes of establishing community connector [*8]trails like the one at issue here include enabling snowmobile traffic between communities that previously lacked a direct connection and, thus, creating economic benefits for both communities — benefits that, of course, arise directly from the increased numbers of snowmobilers traveling on the trails. Significantly, DEC itself acknowledged, in its statement of findings pursuant to the State Environmental Quality Review Act (see ECL art 8) — issued on the same date that DEC approved the planned trail — that an "expected increase in the number of snowmobiles" on the new trail could result in negative environmental consequences requiring mitigation. It was irrational for the agency to disregard its own expectation that snowmobile traffic will increase when determining whether there will be an alteration or expansion of the prior traffic within the contemplation of the Rivers System Act. In light of the clear record evidence that motor vehicle access to the Chain Lakes Road section was limited to a small number of legally authorized users, and closed to the public, opening this wild river area to snowmobile use by the general public will impermissibly alter and expand the prior use. DEC's conclusion to the contrary is irrational and unreasonable, and, therefore, we would reverse the dismissal of petitioners' third cause of action.
Mulvey, J., concurs.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: With petitioner's consent, Supreme Court converted the declaratory judgment action and the associated requests for injunctive relief to a CPLR article 78 proceeding (see CPLR 103 [c]).

Footnote 2: Generally, the 2009 Guidance indicates that Class II connector trails may be as much as 9 to 12 feet wide, depending upon the terrain.

Footnote 3: The fact that further administrative action is required to authorize construction of the Cedar River Bridge or permit use of the Polaris Bridge by snowmobiles is also fatal to petitioners' argument that the APA's approval of the Complex Plan inflicted actual injury by expressing allegedly erroneous interpretations of the Rivers System Act and the Master Plan that open the door to uses that have previously been understood to be prohibited (see e.g. Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d at 191-192 [rejecting the argument that issuance of the 2009 Guidance amounted to a final act because it expressed allegedly improper interpretation of certain terms]).


Footnote 4: The land was conveyed to the Nature Conservancy a few years before its purchase by the state. 

Footnote 5: DEC submitted evidence that public funds were used for this purpose in the late 19th and early 20th centuries.

Footnote 6: Notably, it appears that the membership of these clubs was limited in size; for instance, several of the affiants noted that construction of a bridge in another area had permitted one of the clubs to increase its membership from 25 to 50.